Argued and submitted October 30, 1989, affirmed March 14, 1990

# STATE OF OREGON,
*Respondent,*

*v.*

# DANIEL CARL ZIGLER,
*Appellant.*

(10-89-00559; CA A60049)

788 P2d 484

Lynn Shepard, Eugene, argued the cause for appellant. With her on the brief was Shepard & Wagner, Eugene.

Ann Kelley, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

GRABER, P. J.

## GRABER, P. J.

Defendant appeals his conviction on one count of unlawful manufacture of a controlled substance, ORS 475.992(1)(b), and two counts of unlawful possession of a controlled substance. ORS 475.992(4)(a), (b). He challenges the trial court's denial of his motion to suppress evidence found in a warrantless search of his automobile. We affirm.

Officer Underdahl was dispatched to a residential address in response to a tip, from an anonymous informant, that a man "was possibly loading a meth lab into a brown Ford car."[1] The dispatcher described the car and gave Underdahl its license number. Someone from the police department also called a neighbor of defendant, who verified that a man was loading boxes into a brown car at the address that the informant had given. The neighbor told the police when the person left and in what direction, and the dispatcher relayed the additional information to Underdahl.

Underdahl parked near the address and then followed the car described by the dispatcher as it went past him. The officer testified that "the trunk was open[,] obscuring the vision of the driver" and that there were items piled up in the back seat. He tried to stop the car, using the overhead light, a block after he began following it. The car immediately sped up "considerably," ran three stop signs, and stopped abruptly back at the house where it had started. Defendant got out of the driver's seat and ran away, jumping a fence in the process. Underdahl caught up with him and arrested him about two blocks away. When another officer arrived, Underdahl released defendant to him.

Underdahl then went back to defendant's car and, from outside the car, noticed a large brown bottle in the back seat. The bottle was a type that "commonly * * * holds chemicals used in meth production." Underdahl had seen similar bottles in connection with the production of methamphetamine "numerous times." The police searched the car without a warrant. They found marijuana and lab equipment

---

[1] The trial court made findings of fact that are supported by evidence. In addition, some facts are undisputed. When a court has made no explicit findings on disputed facts, we presume that it found the facts in accordance with its ruling on the motion to suppress. *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968).

and chemicals associated with the manufacture of methamphetamine.

In *State v. Brown,* 301 Or 268, 274, 721 P2d 1357 (1986), the Supreme Court held that there is an "automobile exception" to the warrant requirement of Article I, section 9, of the Oregon Constitution,

> "provided (1) that the automobile is mobile at the time it is stopped by police or other governmental authority, and (2) that probable cause exists for the search of the vehicle."

If those requirements are met, the police can make "an immediate warrantless search of the entire automobile for the object of the search." 301 Or at 277. Defendant argues that the stop was unlawful, that the police had no probable cause to search, that the car was immobile when the officers first came in contact with it, and that "[t]he search was not conducted immediately upon the stop of the vehicle."

■ Defendant argues that the initial stop was unlawful, because it started as a "pretext stop." More specifically, he asserts that the officer could not properly consider the anonymous informant's tip in deciding that he suspected that defendant was involved in criminal activity. However, the officer's reason for suspecting that defendant was committing a crime and for following him in a public place is irrelevant to the lawfulness of the stop. The officer was authorized to stop defendant when he observed a traffic offense. ORS 815.270; ORS 810.410(3)(b); *State v. Olaiz,* 100 Or App 380, 786 P2d 734 (1990).

■ Defendant next complains that the police lacked probable cause to search the car. There was probable cause. Underdahl had received a report of suspected illegal activity, which his later observations corroborated. Defendant fled when Underdahl tried to stop him for committing a traffic offense. A person who attempts to elude a police officer "normally does so for a reason." *State v. Tremaine,* 56 Or App 271, 276, 641 P2d 637, *rev den* 293 Or 394 (1982). Underdahl also saw the brown bottle, which was "consistent with drug activities," in plain view from outside the car. Those facts, taken together, provided probable cause.

■ Next, defendant asserts that the mobility element of the automobile exception was not satisfied, because the car

was immobile when "the officers first came in contact" with it and because the "mobility and likelihood of movement of the automobile were extremely minimal." He bases those arguments on the fact that he fled from the car and was apprehended before returning to it. However, all that is required to satisfy the mobility element is that the "automobile is mobile at the time it is stopped by [the] police." *State v. Brown, supra,* 301 Or at 274. The car was mobile when the police pulled it over, so the exception can apply. *State v. Kosta,* 304 Or 549, 555, 748 P2d 72 (1987); *State v. Brown, supra,* 301 Or at 277-78.

■    Finally, defendant argues that "the requirement of *Brown* for an immediate search to justify the lack of a warrant was not met in this case." In *State v. Quinn,* 290 Or 383, 623 P2d 630 (1981), the Supreme Court discussed the effect of a delay between the events of seizure of a vehicle and a warrantless search of it. Although *Quinn* was decided under the Fourth Amendment, its reasoning is persuasive under Article I, § 9. The court noted that "[e]xigent circumstances do not last forever"; therefore, a "warrantless search must be commenced as promptly after the seizure as is reasonable in the circumstances." 290 Or at 392. The court held that an overnight delay was too long, because "the delay was not occasioned by the impracticability of searching the car immediately." 290 Or at 392. Nonetheless, the court noted that, when a person is arrested in a "crime-related automobile," the police may need to perform other tasks before searching the automobile, and the resulting delay would be reasonable in the circumstances. 290 Or at 392.

There is conflicting evidence concerning the length of the delay before the police searched defendant's car. Defendant cites one neighbor's testimony that about 45 minutes elapsed between defendant's flight and the search. Even if that estimate is correct, during that time Underdahl took defendant into custody, returned to the car, communicated with another officer who had arrived to assist, and sought guidance from the district attorney's office. There is no suggestion in the record or in defendant's argument that the search was deliberately delayed or that the police were doing anything other than necessary and appropriate tasks in the interim. Under the circumstances, the search was sufficiently

immediate to be valid under the automobile exception to the warrant requirement.[2]

Affirmed.

---

[2] Defendant does not raise any arguments under the United States Constitution.