237 P.3d 842 (2010)
236 Or. App. 32
STATE of Oregon, Plaintiff-Appellant,
v.
James Tyler NIX, Defendant-Respondent.
07122775; A138483.
Court of Appeals of Oregon.
Argued and Submitted July 30, 2009.
Decided June 23, 2010.
*845 Douglas F. Zier, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.
Bronson D. James, Chief Deputy Defender, argued the cause for respondent. With him on the brief was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.
Before HASELTON, Presiding Judge, and ARMSTRONG, Judge, and DEITS, Senior Judge.
HASELTON, P.J.
The state appeals an order suppressing evidence discovered during a warrantless search of data contained in a cellular telephone that defendant possessed at the time of his arrest. ORS 138.060(1)(c). The state argues that the warrantless search was lawful either because of exigent circumstances or as a valid search incident to arrest. We review the trial court's order for errors of law, State v. Ehly, 317 Or. 66, 75, 854 P.2d 421 (1993), and conclude that the search was valid as incident to defendant's arrest. Accordingly, we reverse and remand.
The material facts are not in dispute. On November 30, 2007, Albany Police Officer Jones was advised to watch for a specific car in which defendant, who was being investigated for drug-related crimes and was the subject of arrest warrants, was a passenger. The arrest warrants pertained to possession of a controlled substance, endangering the welfare of a minor, and a parole violation on a conviction for manufacturing of a controlled substance. Earlier that same day, another Albany officer, Parker, who had defendant under surveillance, had seen him engage in what appeared to be a "hand-to-hand" transaction for drugswith that occurring immediately after, and apparently in direct response to, a call that defendant had received on his cellular telephone.[1]
Jones saw the car and initiated a lawful traffic stop. Defendant fled on foot, but, after a short chase, Jones successfully apprehended him. After arresting defendant, Jones conducted a patdown search, which revealed, among other things, 22 small clear plastic baggies commonly used to package drugs, over $370 in cash, and a cellular telephone. While Jones counted the cash, defendant's telephone rang "continually." At that point, based on defendant's criminal history, the items he found on defendant, and his knowledge of the ongoing investigation of defendant for drug-related crimes, Jones believed that he had probable cause to arrest defendant for delivery of a controlled substance.[2]
While still at the scene of the stop and arrest, Jones contacted Parker and another Albany officer, Davis, who was also involved in the investigation of defendant, and described what he had discovered. Parker and Davis told Jones to deliver the cellular telephone to yet another Albany officer, Hurley, who was the department's crime analyst and had special training in the examination of cellular telephones. Hurley's expertise was required, Davis later testified, because of the risk that, in untrained hands, the telephone could be accidentally locked or the battery *846 could discharge, which could also lock the telephone.
After defendant was arrested, Jones took the cellular telephone directly back to the police department and handed it to Hurley. That afternoon, Hurley searched defendant's cellular telephone and found text messages that he believed were drug related and images "consistent with methamphetamine." Hurley completed his examination of the cellular telephone within 40 minutes of defendant's arrest.
Defendant was taken to jail. Within five minutes of arriving at the jail, defendant was placed in a holding cell where he had access to a telephone from which he could make collect calls.
Defendant was charged with the unlawful delivery and possession of methamphetamine. Before trial, he moved to suppress the evidence obtained from his cellular telephone and any oral statements that he made in response to that evidence. As amplified more fully below, defendant argued that the warrantless search was unlawful because the "exigency" of his arrest had dissipated by the time of the search. The state countered that the search was lawful either on the basis of exigent circumstances or as a search incident to arrest.
At the hearing on that motion, Davis and Parker testified that they wanted to search the cellular telephone because they believed that it could contain evidence, such as text messages, photographs, telephone logs, and contact information, that linked defendant to the delivery of a controlled substance. Parker testified that cellular telephones are often used by people who distribute controlled substances and that evidence of such crimes is discovered in cellular telephone searches "well over 90 percent of the time."
Only minimal evidence was developed regarding the particular features of the cellular telephone that was searched in this case. Additionally, no evidence was developed regarding the storage capacity of the cellular telephone or of cellular telephones generally, or regarding the features that distinguish cellular telephones from other storage mechanisms, such as address books or briefcases, or liken them to other electronic devices, such as laptop computers.
The officers also testified about the need to access the cellular telephone immediately, before a warrant could be obtainedwhich, according to Parker, could take three to four hours. The officers testified that one concern was that the battery could die, which would necessitate finding a way to recharge the telephone and could, potentially, lock the telephone.[3] At the time the telephone was seized, however, the telephone was not locked and there was battery power. Another concern was that defendant could call his service provider while in jail and direct it to remotely "fry the chip" in his cellular telephone, erasing all of the information stored on the telephone or otherwise preventing the information from being accessed.
In moving for suppression, defendant relied primarily on State v. Clarke, 110 Or.App. 114, 822 P.2d 138 (1991), rev. den., 313 Or. 75, 828 P.2d 457 (1992), contending that, because of the passage of time between defendant's arrest and when the contents of the telephone were examined, the search was unlawful. The thrust of defendant's argument appears to have been that, given the lapse of time, even if (as defendant disputed) there was probable cause to arrest defendant for delivery of a controlled substance and to seize the cellular telephone, the police were required, under the reasoning in Clarke, to obtain a warrant before examining the data contents of the telephone.[4]
*847 Although defendant included an unadorned citation to the Fourth Amendment to the United States Constitution in his suppression motion to the trial court, he did not cite any federal case law or otherwise develop an independent federal analysis in his motion or at the hearing. Specifically, defendant failed to distinguish the analysis under the Fourth Amendment for lawful searches incident to arrest from that applicable under Article I, section 9, of the Oregon Constitution. See State v. Caraher, 293 Or. 741, 756, 653 P.2d 942 (1982) (rejecting the federal practice of determining whether certain items of personal property warranted constitutional protection for purposes of the search incident to arrest exception under Article I, section 9).
The state, also relying exclusively on Oregon law, responded that the warrantless search of defendant's cellular telephone was lawful as either a search incident to arrest or as justified by exigent circumstances. In invoking the "search incident" exception, the state contended that the search of defendant's cellular telephone was analogous to the search of a closed container. The state further asserted that the search related to a crime for which the officers had probable cause to arrest defendant and that the search was completed within a reasonable period of time. With respect to exigent circumstances, the state contended that the risk that defendant or another person could have the cellular telephone "remotely erased" justified the warrantless examination of the data contained in the telephone.
Neither party addressed whether the particular features and characteristics of cellular telephones generally, or of the particular cellular telephone that was searched in this case, warranted distinct treatment under Oregon law. Additionally, neither party mentioned, much less differentiated, the federal analysis in their arguments to the trial court at the hearing.
The trial court announced its factual findings at the hearing. The trial court found that people involved in the distribution of controlled substances use cellular telephones when conducting those transactions and that the telephones often contain telephone numbers, contacts, and other information that would assist law enforcement in prosecuting those crimes. The trial court also found that the batteries in cellular telephones may discharge and that the telephones can also become locked. However, the trial court found that, in the event the cellular telephone did become locked, "upon proper request" and given the telephone's serial number, the telephone's service provider could unlock the telephone. The trial court further found that, although the information contained on a cellular telephone could be "wiped clean" by the telephone's service provider, this possibility required defendant to know the serial number for his telephone, which he was unlikely to have memorized or in his possession, and that this possibility was additionally contingent on the service provider accepting a collect call from defendant in jail.
Also at the hearing, the trial court ruled on the issue of probable cause. In that regard, the trial court concluded that "[t]here's no question in my mind that there's probable cause. So, to the extent the defense says there's no probable cause, I disagree with *848 that, there is probable cause to search the phone."
Thereafter, the trial court issued two letter opinions. In its first letter opinion, the trial court rejected the state's argument that the search was justified based on exigent circumstances:
"I do not find that there were exigent circumstances which justified searching the contents of defendant's cell phone without a warrant. The state argues that the battery might run down and in order to power up the phone they may have to get a code from the phone's service provider. They also indicate that the defendant, from jail, could provide certain information to the provider that may result in the provider * * * erasing information from the phone. The state offers no evidence that, even if the defendant had the information necessary and even if the service provider would accept a collect call from jail, that the service provider would not delay erasing information if a police agency called them and asked that they not do so while a search warrant was being obtained. In short, the state may have proven that it might be inconvenient for them to get a warrant and safeguard the contents of a cell phone but inconvenience falls short of exigent circumstances."
In a second letter opinion, the trial court summarily rejected, without analysis, the state's alternative argument that the warrantless search was justified as a search incident to arrest.
On appeal, the state renews its principal contentions to the trial court. Because the warrantless search would be lawful if justified on either of the alternative grounds posited by the state, reversal is required if we conclude that the search of the cellular telephone contents was justified either as a valid search incident to arrest or by exigent circumstances. For the reasons that follow, we conclude that the warrantless search was lawful as a search incident to arrest. Accordingly, we do not address the parties' arguments regarding exigent circumstances.
Before addressing the merits of the parties' contentions, it is important to clarify the relationship (or nonrelationship) between defendant's present arguments as respondent on appeal and those defendant advanced before the trial court. That clarification is not only useful, but imperative, becauseas will become apparentit informs our ability to review certain of those contentions that are presented as alternative bases for affirmance.
Four aspects of defendant's position on appeal are especially pertinent. First, notwithstanding defendant's principal reliance on Clarke before the trial court for the proposition that the search incident to arrest exception was inapplicable because of the lapse of time and the ability to apply for a warrant to search the cellular telephone's contents, see 348 Or.App. at 36-37, 237 P.3d at 846, defendant, as respondent, does not renew that contention or otherwise attempt to defend the trial court's suppression ruling on that basis. Indeed, respondent's brief on appeal does not include any reference to Clarke.
Second, defendant, as respondent, contendsas he at least arguably did before the trial court, see 348 Or.App. at 36-37 n. 4, 237 P.3d at 846-47 n. 4that the search could not be a valid search incident because that search did not, and could not, pertain to the charges, as specified in the outstanding warrants, on which defendant was arrested (viz., a parole violation for manufacturing a controlled substance, possession of a controlled substance, or endangering the welfare of a minor).
Third, defendant, as respondent, contends that "[t]he nature of cell phones is such that a search of all the data on the device is too intrusive a privacy violation, and too intensive a search, to be permitted absent a warrant." (Boldface omitted.) Defendant elaborates:
"Despite [State v.] Owens[, 302 Or. 196, 729 P.2d 524 (1986),] rejecting an Article I, section 9, analysis that was dependent upon the nature of the personal effect, the Owens court could not contemplate the sophisticated nature of today's cell phones. These devices are now indistinguishable from a computer, capable of containing vast amounts of data, from *849 documents, health records, finances, taxes, music, movies, photographs, as well as full internet browsers with detailed search histories, passwords, [and] personal account information.
"It is because of the nature of the device, that a search of a cell phone is not a simple search of a cigarette pack, or makeup container, or a pill box. It is a search not so much of an [o]bject, as a portal. Through the cell phone the searcher can gain information on all aspects of a subject's life. The cell phone of today can hold more personal information, in data format, than a U-Haul trailer could hold in 1986, when Owens was decided."
That contentionthat cellular telephones are categorically entitled to qualitatively different treatment for purposes of the search incident exceptionwas not raised, much less developed, before the trial court. It is entirely new on appeal.
Fourth, and finally, defendant, as respondent, advances an extended, and nuanced, argument that the search here would not be lawful under the Fourth Amendment as a search incident to arrest. That presentation proceeds from a discussion of myriad federal decisionsnone of which was cited to the trial court[5]and ultimately urges that, given categorical constructs adopted by the federal courts and particular purported characteristics of cellular telephones, including with respect to data storage capacity, a warrantless search of an arrestee's cellular telephone cannot be deemed a lawful search incident under the Fourth Amendment. Again, no distinct Fourth Amendment analysis was raised before the trial court, and no record pertaining to the purported pertinent characteristics of cellular telephones generallymuch less defendant's cell phone specificallywas developed before the trial court.
With the procedural posture so clarified, we turn to the merits.
Article I, section 9, prohibits an officer from conducting a warrantless search unless that search falls within a judicially recognized exception to the warrant requirement. State v. Stevens, 311 Or. 119, 126, 806 P.2d 92 (1991). The state bears the burden of proving that such an exception to the warrant requirement existed. Id. A search incident to arrest is one such exception. State v. Owens, 302 Or. 196, 200, 729 P.2d 524 (1986).
Under Article I, section 9, police can, without a warrant, search items, including closed containers, "found on or immediately associated with the arrestee," when the officer reasonably believes that the item constitutes, or may contain, evidence relating to a crime for which the officer has probable cause to arrest. Owens, 302 Or. at 200-02, 729 P.2d 524. If an officer arrests a person based on an arrest warrant, but also has probable cause to arrest that person for a new crime, the officer may conduct a search for evidence of that new crime so long as the search is reasonable under the circumstances. State v. Lander, 137 Or.App. 222, 225-26, 903 P.2d 903 (1995), rev. den., 323 Or. 114, 913 P.2d 1384 (1996); see also State v. Plummer, 134 Or.App. 438, 442, 895 P.2d 1384 (1995). In all events, to be valid, a search incident to arrest must be reasonable in its time, space, and intensity in light of the relevant circumstances. See Owens, 302 Or. at 205, 729 P.2d 524; see also Caraher, 293 Or. at 758, 653 P.2d 942.
We begin by addressing what we perceive to be the probable basis for the trial court's unelaborated conclusion that the inspection of the cellular telephone's data contents was not a valid search incident to arrestviz., that, under Clarke, because of the time between the seizure of the telephone and the examination of its contents at the police station, the search was not reasonable in time and, consequently, the police were obligated to obtain a warrant. We perceive that to be the trial court's likely rationale because the court flatly rejected defendant's assertion that the search did not relate to a crime for which the police had probable *850 cause, see 348 Or.App. at 39-40, 237 P.3d at 848, and because defendant's argument before the trial court highlighted Clarke.[6] Although defendant, as respondent, does not renew that contention in support of the trial court's ruling, that failure does not preclude us from, as a prudential matter, considering and addressing the correctness of a contention raised to the trial court on which the trial court may well have relied.[7]
In Clarke, we held that the search of a closed briefcase obtained from the defendant's car at the time of his arrest, but not opened until "[s]ome time later" at the police station, was not a valid search incident to arrest. 110 Or.App. at 116, 822 P.2d 138. In so holding, we emphasized that the state had proffered no justification for the intervening delay in performing the searchand, particularly, that there was no evidence in the record "that suggests that the police were involved in performing other necessary tasks that required the search of the briefcase to be delayed." Id. at 117, 822 P.2d 138. We further noted that, at the suppression hearing, an officer had testified that there was time to secure a search warrant, but that the police did not think one was necessary. Given those circumstances, the police were obligated to obtain a warrant before opening the briefcase. Id.
We framed our analysis and disposition in Clarke in explicit contrast to the circumstances in State v. Zigler, 100 Or.App. 700, 788 P.2d 484 (1990). In Zigler, the defendant tried to elude the police in his car, then abruptly stopped his car, and tried to run away on foot. Id. at 702, 788 P.2d 484. Up to 45 minutes elapsed between the time the defendant fled from his car and the police officers' warrantless search of that car. Id. at 704, 788 P.2d 484. That delay represented the time that it took for the arresting officer to capture the defendant, return to the car, communicate with another officer who had come to assist, and seek guidance from the district attorney's office. Id. In affirming the lawfulness of the warrantless search, we observed that there was "no suggestion in the record or in [the] defendant's argument that the search was deliberately delayed or that the police were doing anything other than necessary and appropriate tasks in the interim." Id.
More recently, in State v. Hernandez, 199 Or.App. 566, 113 P.3d 437 (2005), we upheld the admission of evidence discovered during a search conducted at a police station, 20 to 30 minutes after the defendant's arrest. In Hernandez, the defendant was stopped for a traffic offense on a busy downtown street at night. Id. at 568, 113 P.3d 437. He was arrested when he was unable to produce a driver's license or proof of insurance. Id. The arresting officer discovered a pocket knife during the subsequent patdown of the defendant's person. Id. The officer also discovered a golf-ball sized object wrapped in black electrical tape that, according to the passenger, belonged to the defendant and probably contained heroin. Id. Approximately 20 minutes later, at the police station, the officer opened the knife, which revealed heroin residue on the blade. About 10 minutes after that, the officer cut open the ball, which also contained heroin. Id. The officer testified that he waited to perform those searches until he was at the police station because, given the risk that the drug evidence could fall out of its packaging, he preferred to open the ball in a secure, controlled environment. Id. at 569, 113 P.3d 437.
The defendant moved to suppress, arguing that, "because of the delay of 20 to 30 minutes, the search of the knife and the ball were not valid searches incident to arrest." Id. at 568-69, 113 P.3d 437. The trial court *851 denied that motion. Id. at 569, 113 P.3d 437. On appeal, we affirmed, explicitly invoking Zigler:
"[D]efendant renews his argument that the delay in examining the evidence was simply too long to be reasonable. The state responds that, given the time of day, the location of the arrest site, and the risk of loss or contamination by examining the evidence on the street, the fact that the officer waited 20 to 30 minutes before examining it was reasonable. We agree. See, e.g., State v. Zigler, * * * (45-minute delay reasonable when `[t]here is no suggestion in the record or in defendant's argument that the search was deliberately delayed or that the police were doing anything other than necessary and appropriate tasks in the interim')."
Hernandez, 199 Or.App. at 569, 113 P.3d 437 (second brackets in original).
The circumstances presented in this case are directly analogous to those presented in Hernandez. As in Hernandez, the 40-minute delay between defendant's arrest and the search of his cellular telephone was "necessary and appropriate" to ensure that the cellular telephone could be expertly searched and to protect against the inadvertent destruction of evidence. Further, as in Ziglerand in explicit contrast to Clarkethere is no suggestion in this record of any unjustifiable delay. Rather, Jones promptly delivered the cellular telephone to Hurley so that Hurley was able to complete the search within 40 minutes after defendant's arrest. Accordingly, the search of defendant's cellular telephone was reasonable in time for purposes of the search incident to arrest exception.
We proceed to defendant's first proffered alternative basis for affirmanceviz., that the search of the cellular telephone's data contents did not relate to a crime for which Jones had probable cause to arrest defendant. As noted, the trial court explicitly rejected that contention, concluding, "There's no question in my mind that there's probable cause."
Defendant's position is predicated on the proposition that the only pertinent crimes are those for which defendant was, in fact, arrested, viz., the crimes that were the subjects of the outstanding warrants. However, that proposition is erroneous. Under Owens, a search incident to arrest need not relate to the crime for which defendant was arrested so long as it relates to another crime for which the officer effecting the arrest also had probable cause. 302 Or. at 204, 729 P.2d 524.
The state presented overwhelming, uncontroverted evidence establishing probable cause, as of the time of the search incident, to arrest defendant for delivery of a controlled substance. Defendant, who had a prior conviction for manufacturing of controlled substances, was the subject of an ongoing investigation for drug-related crimes. During the course of that investigation, the police monitored controlled buys from defendant's residence and interviewed people who claimed that defendant had dealt them methamphetamine. Moreover, on the day of his arrest, defendant was observed engaging in what appeared to be a "hand-to-hand" transaction involving controlled substances. Further, when Jones searched defendant, he discovered items consistent with that crime, including a number of small, clear plastic baggies commonly used for packaging controlled substances and a significant amount of cash. Based on his knowledge of the ongoing investigation and the items he found on defendant, Jones reasonably relied on the information he received from other officers that there was probable cause to arrest defendant for delivery of a controlled substance.
Because there was probable cause to arrest defendant for the delivery of a controlled substance, the officers could conduct a "meticulous investigation" of those personal effects found on defendant's person that could reasonably conceal evidence of that crime. See Owens, 302 Or. at 202, 729 P.2d 524. That search of defendant's personal effects was not limited to those effects that remained in defendant's exclusive possession or control so long as defendant had those effects on his person or in his immediate possession at the time of his arrest. See id.
*852 Here, as the trial court determined, defendant's cellular telephone could reasonably contain evidence of delivery of a controlled substance. At the suppression hearing, Parker testified that people involved in the distribution of controlled substances use cellular telephones in conducting those activities and that cellular telephones often contain evidence of those crimes. Moreover, on the day of his arrest, police observed defendant using his cellular telephone in connection with an apparent "hand-to-hand" drug transaction. Finally, at the time of his arrest later that same day, defendant's cellular telephone was "continually" ringing, and he had items consistent with the distribution of controlled substances in his possession. In sum, we reject defendant's contentions pertaining to the lack of the requisite nexus between his alleged crimes and the search of his cellular telephone's data contents.[8]
We turn, finally, to defendant's remaining two alternative bases for affirmanceviz., (a) because of purportedly special characteristics of cellular telephones, including with respect to data storage capacity and the concomitant potential for invasion of protected privacy interests, such devices categorically cannot be subject to search incident to arrest under Oregon law; and (b) for essentially the same practical reasons, but applying the qualitatively different analysis under federal law pertaining to searches incident to arrest, such searches of cellular telephones are unlawful under the Fourth Amendment. As noted, neither of those contentions was raised, much less developed, before the trial court.
In Outdoor Media Dimensions Inc. v. State of Oregon, 331 Or. 634, 659-60, 20 P.3d 180 (2001), the Supreme Court identified various constraints on an appellate court's discretion to address an alternative basis for affirmance. Of particular pertinence here is the requirement that "the evidentiary record must be sufficient to support the proffered alternative basis for affirmance." Id. at 659, 20 P.3d 180. That, in turn, requires
"(1) that the facts of record be sufficient to support the alternative basis for affirmance; (2) that the trial court's ruling be consistent with the view of the evidence under the alternative basis for affirmance; and (3) that the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below."
Id. at 659-60, 20 P.3d 180. Thus,
"even if the record contains evidence sufficient to support an alternative basis for affirmance, if the losing party might have created a different record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance."
Id. at 660, 20 P.3d 180 (emphasis in original).
We decline to address defendant's proffered alternative bases for affirmance because, here, we cannot say that the record is "materially * * * the same one that would have been developed" had defendant raised those contentions in the trial court. Id. The premise of defendant's arguments is that cellular telephones are so special, indeed unique, in their character and capacity that they must be treated differently than other receptacles of possible evidence of crimesincluding, for example, "day-timers," calendars, address books, letters, and even diariesin a defendant's possession at the time of arrest. Ultimately, on a fully developed record, there could be some merit to that claim. But, even in this Wi-Fi age, it is hardly a self-evidentmuch less judicially noticeableproposition, factually or legally. In particular, although there was testimony presented at the suppression hearing that cellular telephones commonly contain records of telephone calls, contact information, text messages, and photographs, no evidence was presented about the storage capacity or the *853 nature and types of data of the cellular telephone that was searched in this case.
We have little doubt that, if defendant had presented his present categorical contentions before the trial court, the state may well have adduced substantial evidence, including expert testimony, regarding the capacities of various types of cellular telephones, including defendant's particularly. Indeed, given the significance and implications of the matter,[9] as evidenced by the authorities that defendant cites for the first time on appeal, the trial court might well have invited the submission of such evidence if none were initially forthcoming. We decline to decide such substantial and complex matters on an underdeveloped record.
Reversed and remanded.
NOTES
[1] The Albany Police Department had been investigating defendant for about a month before his arrest. During that month, the police had monitored controlled drug buys from defendant's residence. However, before the police could search that residence, defendant moved out. Although the police were unable to determine defendant's new address, an informant told them that defendant was involved in distributing methamphetamine at two other locations. The police observed a vehicle associated with defendant at both of those locations. The police also searched the trash from one of those locations and found phone numbers that "listed" defendant. Additionally, the police executed a warrant at one of those locations and obtained statements from a resident implicating defendant in the distribution of methamphetamine. Finally, witnesses interviewed during an investigation of another person told the police that defendant had sold them methamphetamine.
[2] Jones also testified that he had information from other police officers that they had probable cause to arrest defendant for delivery of a controlled substance.
[3] During oral argument before this court, the state contended that, if the battery in the cellular telephone lost power or discharged, there was also a risk that the information in the phone could be lost. That proposition appears to be unsubstantiated in this record.
[4] The following colloquywhich we appreciate is imprecise in some respectsexpresses the essence of defendant's position:

"[DEFENSE COUNSEL]: Thank you, Your Honor. I just believe that under the circumstances, the police had [defendant] in custody, the cell phone was nowhere near him. They regulated, obviously, his freedom and behavior. There was no reason in the world they couldn't have applied for a search warrant. Had they done so, having listened to Detective Parker's recitation [about the ongoing investigation of defendant for delivery of a controlled substance], * * * obviously probable cause would have been established. I think it's important for the police to take that step.
"And the contents of the cell phone, whilethere was no reason to believe there was anything in the cell phone other than just telephone numbers. There was no reason to believeno probable cause even to believe that there was evidence of any criminal agency contained in the cell phone other than perhaps phone numbers. And that's
"THE COURT: Oh, well then are you saying there wasn't probable cause to think there was something in the phone?
"[DEFENSE COUNSEL]: I do not believe there was.
"THE COURT: Oh, okay. I didn't think that was an issue. But it is an issue?
"[DEFENSE COUNSEL]: They certainly had probable cause to arrest and to seize what they seized. I think that they then needthat the exigency has dissipated at that point and that they need to get the warrant.
"THE COURT: All right.
"[DEFENSE COUNSEL]: The only case I was able to come up with was State vs. Clarke, as indicated in my motion. And because of that, I think that is as close as I can get to anything to deal with this. Thanks."
(Emphasis added.)
[5] E.g., United States v. Park, No. CR 05-375 SI, 2007 WL 1521573 (N.D.Cal., May 23, 2007); United States v. Cote, No. 03CR271, 2005 WL 1323343 (N.D.Ill., May 26, 2005), aff'd, 504 F.3d 682 (7th Cir.2007), cert. den., ___ U.S. ___, 128 S.Ct. 2519, 171 L.Ed.2d 800 (2008); United States v. Brookes, No. CRIM 2004-0154, 2005 WL 1940124 (D.V.I., June 16, 2005).
[6] As noted, defense counsel observed, "The only case I was able to come up with was State vs. Clarke, as indicated in my motion. And because of that, I think that is as close as I can get to anything to deal with this." See 348 Or.App. at 36-37 n. 4, 237 P.3d at 847 n. 4.
[7] Certainly, if a trial court explicitly bases a ruling on a particular rationale, we are obligated to affirm if that rationale is correct, even if the respondent does not defend that rationale but, instead, opts only to assert alternative bases for affirmance. Although that prudential imperative may be less acute where the trial court has not explicitly expressed its reasoning, the principle is still applicable where, as here, it is likely, in the totality of the circumstances, that the trial court's ruling was based on a specific contention raised and developed by the prevailing party.
[8] Because there was probable cause to arrest defendant for delivery of a controlled substance, and defendant's cellular telephone could reasonably contain evidence of that crime, there is no need for us to consider whether the cellular telephone could reasonably contain evidence related to those crimes for which there were warrants for defendant's arrest (i.e., possession of a controlled substance, child endangerment, and a parole violation on a manufacturing of a controlled substance conviction).
[9] Cf. U.S. v. Comprehensive Drug Testing, 579 F.3d 989, 1004-06 (9th Cir.2009) (discussing the unique difficulties presented under the Fourth Amendment by searches of data stored electronically as compared to searches of paper or physical data).