Argued and submitted July 31, 2012, reversed and remanded February 27, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROBERT JASON STOOKEY,
*Defendant-Appellant.*

Coos County Circuit Court
10CR0539; A147101

297 P3d 548

David L. Sherbo-Huggins, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Leigh A. Salmon, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Duncan, Judge, and Brewer, Judge pro tempore.

DUNCAN, J.

**DUNCAN, J.**

This is a criminal case in which defendant appeals a judgment of conviction and sentence for one count of failure to report as a sex offender, ORS 181.599. Defendant assigns error to the trial court's denial of his motion to suppress evidence obtained as a result of a traffic stop, which defendant asserts was without probable cause and, therefore, violated his right to be free from unreasonable searches and seizures under Article I, section 9, of the Oregon Constitution.[1] For the reasons that follow, we reverse and remand.

We first review the legal test for probable cause. In order to stop and detain a person for a traffic violation, an officer must have probable cause to believe that the person has committed a violation. ORS 810.410(2), (3); *State v. Matthews*, 320 Or 398, 402, 884 P2d 1224 (1994). Probable cause has two components. First, at the time of the stop, the officer must subjectively believe that a violation has occurred, and second, that belief must be objectively reasonable under the circumstances. *State v. Miller*, 345 Or 176, 186, 191 P3d 651 (2008) (describing *State v. Cloman*, 254 Or 1, 456 P2d 67 (1969)). For an officer's belief to be objectively reasonable, the facts, *as the officer perceives them*, must actually constitute a violation. *State v. Tiffin*, 202 Or App 199, 203, 121 P3d 9 (2005). Thus, an officer's belief may be objectively reasonable even if the officer is mistaken as to the facts. *Id.* (citing *State v. Hayes*, 99 Or App 387, 389, 782 P2d 177 (1989), *rev den*, 309 Or 441 (1990), and *State v. Isley*, 182 Or App 186, 190, 48 P3d 179 (2002), for the proposition that a "probable cause determination requires examination of facts of which officer was cognizant and officer's beliefs about those facts need not turn out to be correct").

When reviewing a denial of a motion to suppress, we are bound by the trial court's findings of historical fact if there is evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). If the court did not make findings on a particular issue, and there is evidence from which the facts could be decided more than one way, we

---

[1] Article I, section 9, of the Oregon Constitution provides, in relevant part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

presume that the court found the relevant historical facts consistently with its ultimate conclusion. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). We state the facts in accordance with those standards.

Recruit Trooper Looney was patrolling Highway 42 in Coos County on March 17, 2010. As the trooper, who was driving in the left lane, began to pass defendant, who was driving in the right lane, he noticed a horizontal crack in defendant's windshield that he believed was in defendant's line of sight. The trooper pulled defendant over because he was concerned that the crack could be distracting and dangerous. The crack was the trooper's only reason for stopping defendant. The trooper requested defendant's driver's license, which the trooper used to conduct records checks through dispatch. The records checks revealed that defendant was out of compliance with his sex-offender registration requirements. The trooper arrested defendant for failing to report as a sex offender, ORS 181.599.

Before trial, defendant filed a motion to suppress the evidence that the trooper obtained after stopping him, arguing that the trooper lacked probable cause to believe that he had committed a traffic violation. The state filed a written response in which it argued that the trooper had probable cause to believe that defendant had violated ORS 815.020, which provides:

"(1) A person commits the offense of operation of an unsafe vehicle if the person does any of the following:

"(a) Drives or moves on any highway any vehicle which is in such unsafe condition as to endanger any person.

"(b) Owns a vehicle and causes or knowingly permits the vehicle to be driven or moved on any highway when the vehicle is in such unsafe condition as to endanger any person.

"(2) The offense described in this section, operation of an unsafe vehicle, is a Class B traffic violation."

The state argued that the trooper had probable cause to believe that defendant had violated ORS 815.020 because a cracked windshield (1) can interfere with a driver's ability to see the road, increasing the likelihood of a collision, and

(2) is more likely to shatter if struck by a rock or other object, or in the event of a collision.[2]

At the pretrial hearing on the motion to suppress, the trooper testified, on direct examination, as follows:

"[TROOPER:]   [A]s I was overtaking [defendant] going to pass him I noticed that the windshield was cracked directly in front of him—in front of the driver.

"[STATE:]   Can you describe the crack a little bit?

"[TROOPER:]   The crack was horizontal. It wasn't vertical. And, it was in the line of sight for him, you know, if he was driving.

"[STATE:]   Did that concern you?

"[TROOPER:]   Yes. It's a safety issue. Just that it can be distracting. It can cause reflection from the sun. It's just—it's as if—those little crystals that people hang from their rear view mirrors, they reflect light. It's the same sort of situation. You've got different planes. And, as the brake—light can reflect in the eyes."

On cross-examination, the trooper further testified:

"[DEFENSE COUNSEL:]   And, was the—the crack on the windshield, was it up high, or low, or directly—directly in his line of sight?

"[TROOPER:]   It was below the center, but it was in his sight in the—of—through the driver's visual path.

"[DEFENSE COUNSEL:]   About how far do you think it was below the center of the windshield?

"[TROOPER:]   I do not recall."[3]

---

[2] Although the state does not specify under which subsection of ORS 815.020 the trooper had probable cause to stop defendant, we focus on ORS 815.020(1)(a) because the state adduced evidence that defendant was driving the car, as required by ORS 815.020(1)(a), whereas it did not adduce evidence that defendant owned the car, as required by ORS 815.020(1)(b).

[3] In support of his motion to suppress, defendant presented evidence about the physical characteristics of the crack. He testified that it was a long, horizontal crack just above his dashboard. He also introduced the video of the stop, which he had obtained from the trooper's office, and photographs of the windshield. The photographs show that the crack was approximately two inches from the base of the windshield.

Based on defendant's evidence, the trial court found that, "at the time when [defendant] is driving, [the crack] is not interfering with his line of sight." Thus, the

The trooper did not testify to any other facts regarding the crack or why, in his view, it was dangerous.

The court denied defendant's motion to suppress, concluding,

"I still believe that * * * Trooper Recruit Looney had a reasonable basis—an objective, reasonable basis and a substantial basis to pull [defendant] over for the violation of the crack in the windshield. So, I am not suppressing this[.]"

Defendant entered a conditional guilty plea, and the court sentenced him to 24 months of bench probation and $1,152 in fines. Defendant appeals, assigning error to the denial of his motion to suppress.

On appeal, defendant does not challenge the trooper's subjective belief that he perceived a horizontal crack in defendant's windshield in defendant's line of sight. Instead, defendant argues that it was not objectively reasonable for the trooper to believe that those facts constituted a violation of ORS 815.020. Defendant argues that the term "endanger" in that statute means "to bring into danger or peril of probable harm or loss," *Webster's Third New Int'l Dictionary* 748 (unabridged ed 2002), and that the harms posited by the state are too speculative to be "probable." In a memorandum of additional authorities, defendant asserts that his citation to the definition of the transitive form of "endanger" is more relevant than the state's citation to the definition of the intransitive form because the statute uses the transitive form of "endanger." *See State v. Glushko/ Little*, 351 Or 297, 311, 266 P3d 50 (2011) (holding that, when consulting dictionaries for the ordinary meaning of statutory terms, courts must examine the definition of the part of speech actually used in the statute).

court found that the crack did not *actually interfere* with defendant's line of sight. That is a different matter than whether the crack, as observed by the trooper, *appeared to interfere* with defendant's line of sight. The court did not reject the trooper's testimony regarding how the crack subjectively appeared to him, and it concluded that the trooper had subjective probable cause to stop defendant, a conclusion that defendant does not challenge on appeal. Accordingly, the issue in this case is whether the crack, as it appeared to the trooper, objectively gave rise to probable cause that defendant had committed a traffic violation.

Defendant also notes that the violation of ORS 815.020 is a Class B traffic violation, and, as such, it is more serious than a violation for driving a vehicle that lacks a proper brake system, ORS 815.125, ORS 815.130 (Class C traffic violation); lacks headlights or brake lights, ORS 816.320, ORS 816.330 (Class C traffic violation); lacks a rear view mirror, ORS 815.235 (Class C traffic violation); or has a windshield covered by any material that "prohibits or impairs the ability to see into or out of the vehicle," ORS 815.220 (Class D traffic violation). Finally, defendant observes that the section of the Oregon Vehicle Code relating to windows and windshields, ORS 815.210 to 815.222, does not prohibit driving with a cracked windshield. If the legislature had intended to make driving with a cracked windshield a violation of the vehicle code, defendant argues, it would have included such a provision in the section relating to windshields.

The state counters that ORS 815.020 does not require the risk of harm to be probable. According to the state, "endanger" means "create a dangerous situation," *Webster's* at 748, and the crack, as the officer perceived it, "could impair the driver's vision, in addition to affecting the structural integrity of the glass itself, creating a risk of injury to defendant and others traveling on the road." Accordingly, the state argues that the trooper had probable cause to initiate the traffic stop.[4]

---

[4] In the alternative, the state argues, for the first time on appeal, that, even if the trooper lacked probable cause to stop defendant, the stop did not result in the discovery of any evidence that was subject to suppression. Specifically, the state argues that defendant "only argued for the suppression of his sex-offender registration status," and that suppression of that evidence is not required because "the state already possessed" it. Even assuming that the state's argument satisfies the requirements for review as a "right for the wrong reason" argument, *see Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001), it is unavailing for two reasons. First, defendant did not argue only for the suppression of his sex-offender registration status. Defendant moved to suppress "all evidence" resulting from the traffic stop. The trial court understood that, stating that it was denying defendant's motion to suppress "the fruits of the stop." Thus, defendant moved to suppress all evidence the state obtained as a result of the stop, which included defendant's identity, location, arrest, and sex-offender registration records. Second, all of that evidence—including defendant's sex-offender registration records—was subject to suppression. *State v. Backstrand*, 231 Or App 621, 629, 220 P3d 748, (2009), *rev allowed*, 350 Or 130 (2011) (discovery of the fact that the defendant's license was suspended was a product of officer's illegal stop and, therefore, was subject to suppression); *Backstrand*, 231 Or App at

As noted above, whether an officer had probable cause to stop an individual for a traffic violation is a legal question consisting of two elements: first, whether the officer subjectively believed that the person had committed a violation, and second, whether the officer's belief was objectively reasonable under the circumstances. *Miller*, 345 Or at 186. Defendant does not challenge the trial court's finding that the trooper subjectively believed that defendant had committed a violation. Thus, the only issue on appeal is whether the trooper's belief was objectively reasonable.

The objective component of the probable-cause inquiry asks whether the facts, as perceived by the officer, constitute a violation of a statute. *Tiffin*, 202 Or App at 203-04; *State v. Stearns*, 196 Or App 272, 275, 101 P3d 811 (2004) ("subjective belief that a traffic infraction occurred was objectively reasonable only if, in fact, obstruction of the word 'Oregon' by a registration plate frame" violated a traffic law); *State v. Hart*, 85 Or App 174, 176-77, 735 P2d 1283 (1987) (officer lacked probable cause to stop the defendant for turning left at a malfunctioning traffic signal because the defendant's turn did not violate any traffic laws). The objective component is satisfied even if the conduct, as perceived by the officer, *actually* violated a statute different from the one that the officer *believed* the conduct violated. *State v. Boatright*, 222 Or App 406, 410, 193 P3d 78, *rev den*, 345 Or 503 (2008). As we explained in *State v. Elmore*, 241 Or App 419, 424-25, 250 P3d 439 (2011),

> "'[A]n officer's belief may be objectively reasonable even if it turns out to be incorrect. Thus, probable cause may be based on a mistake of fact. Moreover, probable cause may be based on a mistake as to *which* law the defendant violated. Nevertheless, in order to satisfy the objective component, the facts that the officer perceives to exist must establish the elements of *an* offense, even if not the offense that the officer believed the defendant committed. Finally, although the facts as perceived by the officer must constitute the elements of an offense, in order to satisfy the objective

633 (Haselton, J., concurring) (same); *State v. Starr*, 91 Or App 267-70, 754 P2d 618 (1988) (evidence of defendant's identity was subject to suppression when obtained during an illegal stop). Therefore, even if defendant's motion had related only to those records, he still would have been entitled to suppression.

component, an officer need not eliminate the possibility that a defense or exception to the offense applies.'"

(Quoting and emphasis in *Boatright*, 222 Or App at 410).

The state asserts that the trooper's belief that defendant had committed a traffic violation was objectively reasonable under the circumstances because the facts perceived by the trooper violated ORS 815.020. To determine whether the facts, as perceived by the trooper, constitute a violation of that statute, we must interpret ORS 815.020. When interpreting a statute, we seek to ascertain the meaning intended by the legislature that adopted it, by examining the statute's text and context and, if it is helpful, its legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). In determining the meaning of a word of common usage, we look to a dictionary for guidance. *See id.* at 175, 175 nn 13-15.

To violate ORS 815.020(1)(a), a vehicle must be in "such unsafe condition as to endanger any person." "Unsafe" is defined as "not safe : exposed or exposing to danger." *Webster's* at 2509. "Condition" is defined as "a mode or state of being." *Id.* at 473. We agree with defendant that, because ORS 815.020(1)(a) uses the transitive form of "endanger," the definition of the transitive form is more pertinent than the definition of the intransitive form. *Glushko/Little*, 351 Or at 311; *State v. Cloutier*, 351 Or 68, 96, 261 P3d 1234 (2011) ("In construing statutes, we do not simply consult dictionaries and interpret words in a vacuum. Dictionaries, after all, do not tell us what words mean, only what words *can* mean, depending on their context and the particular manner in which they are used." (Emphasis in original.)). The definition of the transitive form of "endanger" is "to bring into danger or peril of *probable* harm or loss[.]" *Webster's* at 748 (emphasis added). Thus, to violate ORS 815.020(1)(a), the condition of the vehicle must be sufficiently unsafe that it exposes any person to a danger of probable harm or loss.

The statutory context of ORS 815.020 further persuades us that the statute encompasses only unsafe conditions that pose a *probable* risk of harm or loss to any person and not, as the state asserts, unsafe conditions that merely create a *possible* risk of harm or loss. As defendant notes,

operating an unsafe vehicle in violation of ORS 815.020 is a Class B traffic violation, more serious than obstructing vehicle windows in violation of ORS 815.220, a Class D traffic violation.[5] The legislature apparently considered the harm posed by a driver's decreased ability to see the road through the windshield, and it classified a condition—an obstructed window—posing that type of harm as a Class D violation. Thus, it would be incongruous for a similar condition—a cracked windshield—posing a similar type of harm to constitute a Class B violation.

Furthermore, operating an unsafe vehicle in violation of ORS 815.020 is a more serious violation than operating a vehicle with an improper brake system in violation of ORS 815.130, a Class C violation. That difference in classification suggests that the legislature intended ORS 815.020 to cover more serious dangers than those covered by ORS 815.130. Yet the danger of a collision due to the failure of an improper brake system is at least as great, if not greater, than that due to the shattering of a cracked windshield, which the state argues is encompassed by ORS 815.020. Again, it would be incongruous for the more dangerous condition—an improper brake system—to have been given the more lenient classification.

Thus, to violate ORS 815.020, the condition of the vehicle must pose more than a possible risk of danger. Rather, for the statute's definition to be commensurate with its classification, that danger must be probable. Interpreting

---

[5] ORS 815.220 provides, in relevant part:

"(1) A person commits the offense of obstruction of vehicle windows if the person drives or moves on any highway or owns and causes or knowingly permits to be driven or moved on any highway any vehicle with windows obstructed in a manner prohibited under this section.

"(2) The windows of a vehicle are obstructed in a manner prohibited by this section if any material that prohibits or impairs the ability to see into or out of the vehicle is upon any vehicle window described in this subsection. This subsection applies to any sign, poster, one-way glass, adhesive film, glaze application or other material if the material prohibits or impairs the ability to see into or out of the vehicle. This subsection only applies to the following windows of the vehicle:

"(a) The front windshield.

"* * * * *

"(6) The offense described in this section, obstruction of vehicle windows, is a Class D traffic violation."

ORS 815.020 to include unsafe conditions that create *any* risk of loss or harm, as the state urges us to do, would contradict the legislature's decision to categorize violations of that statute as Class B traffic violations.

The state proposes two theories under which it argues that it would have been objectively reasonable for the trooper to have believed that the crack in defendant's windshield violated ORS 815.020. First, the state argues that it would have been objectively reasonable for the trooper to have believed that defendant's operation of a vehicle with a cracked windshield constituted a traffic violation because the crack interfered with defendant's vision. That theory is unpersuasive. As the state acknowledged before the trial court, whether a windshield crack poses a danger depends on the characteristics of the crack. Here, the trooper testified only that he saw a horizontal crack in the windshield in defendant's line of sight. The trooper did not testify that the crack had multiple veins or that it was unusually wide, either of which might have increased the interference with defendant's vision and thereby heightened the risk of harm to himself or others. Indeed, the trooper's expressed concern was not that the crack was of a size or shape that obstructed defendant's vision, but that the crack might reflect light into defendant's eyes.

It is not enough that defendant's cracked windshield caused some minimally higher risk of harm by creating the possibility of interference with defendant's vision and, thus, negligibly increasing the risk of a collision. Rather, the interference had to be such that it exposed someone to a danger of *probable* harm or loss. On the record before us, we cannot say that the trooper could have objectively believed that the single crack would expose defendant or another person to a danger of *probable* harm or loss by interfering with defendant's vision.

Second, the state argues that it would have been objectively reasonable for the trooper to have believed that defendant's operation of a vehicle with a cracked windshield constituted a traffic violation because the crack compromised the physical integrity of the windshield. The trial court relied on that theory in holding that the

trooper had probable cause to stop defendant. The court hypothesized that, in the event of a hail storm or another unspecified circumstance, the windshield would be more likely to shatter. Nevertheless, we also find the shattering-windshield theory unconvincing. For purposes of that theory, the only relevant fact from the trooper's testimony is that he saw a single crack. The trooper did not testify that he saw a "spiderweb" of cracks, or that the single crack was unusually deep. It would not be objectively reasonable to believe that, due to a single crack, a windshield was in such a dangerous condition that it was *probable* that it would inflict harm or loss upon a person, especially given that, at least as the state and trial court theorized, the risk from the windshield had to be triggered by an event such as a hail storm, flying rock, or collision. It might have been objectively reasonable for the trooper to have believed that the crack minimally weakened the windshield, but it would not have been objectively reasonable for him to have believed that the crack so significantly weakened the windshield that it made it *likely* to shatter, thus bringing the vehicle within the ambit of ORS 815.020(1)(a).

We therefore conclude that the trial court erred in holding that the trooper's belief that the cracked windshield was a traffic violation was objectively reasonable. Thus, the trooper lacked probable cause to stop defendant, and the stop violated Article I, section 9, of the Oregon Constitution. The evidence obtained as the result of the stop was the unattenuated product of that illegality. Accordingly, the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.