Argued and submitted August 21, reversed and remanded November 14, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

GEORGE DUANE ANDERSON,
*Defendant-Appellant.*

Jackson County Circuit Court
105119MI; A149005

314 P3d 335

Lindsey J. Burrows, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Leigh A. Salmon, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

Defendant appeals a judgment of conviction for driving while suspended, ORS 811.182(4), contending that the trial court erred in denying his motion to suppress evidence that was obtained during a traffic stop. After observing a crack in defendant's windshield, a sheriff's deputy stopped defendant's pickup truck and, in the course of the stop, discovered that defendant's license was suspended. Defendant contends that the officer lacked objective probable cause to believe that the windshield crack placed defendant in violation of either ORS 815.020 or ORS 815.270. For the following reasons, we reverse and remand.

The facts are not in dispute. Jackson County Sheriff's Deputy McKay was traveling north when he saw a pickup truck turn south onto the same road; he observed that the pickup truck's windshield was cracked. The only description of the crack that appears in the record was provided at the motion to suppress hearing during the state's direct examination of McKay:

"[MCKAY]: I noticed a large crack going through the windshield of that vehicle and that is why I stopped the vehicle.

"[STATE]: And can you describe that crack for us, please?

"[MCKAY]: The crack was going from—stretching from the passenger side across the windshield all the way to the driver's side of the vehicle.

"[STATE]: And what part of the windshield was it located, down near the wipers or up towards the ceiling of the cab?

"[MCKAY]: It was more up. It was more in the area to where it could have, I guess, impeded the vision of the driver. So it would have been kind of in the eyesight area.

"[STATE]: And was any portion of that a spiderweb crack?

"[MCKAY]: It was off to the passenger side, so off to the right of the driver there was some spiderwebbing.

"[STATE]:   Okay. And then the line goes all the way across from the passenger side to the driver's side?

"[MCKAY]:   Correct.

"[STATE]:   And it's basically a level line all the way across maintaining at that somewhere in the eye level area the whole way across?

"[MCKAY]:   Yeah.

"[STATE]:   Depending on the height of the driver, obviously?

"[MCKAY]:   Yeah, exactly.

"[STATE]:   Now, did you feel like that violated any statutes?

"[MCKAY]:   Yes. I believe that would be operating an unsafe vehicle.

"[STATE]:   And what about a crack would make it an unsafe driving situation?

"[MCKAY]:   Well, there's * * * numerous things that I believe makes it unsafe. For one, you have a crack going roughly through the eyesight of a driver. So he's not only focusing down the road from what he's looking at, he also has something in his vision that is gonna be—his eye is gonna be focusing on somewhat. So he's kind of looking back and forth. In addition to [that] you have spiderwebbing off to the right so if he's looking to the right clearing for a turn or if he's looking at oncoming traffic coming from the right, that's gonna be in the way of his vision as well."

McKay went on to explain that he was concerned that light could potentially refract off the crack into the passenger compartment of the vehicle. He was also concerned that the crack had compromised the integrity of the windshield so that it would not offer the same protection as an uncracked windshield in the event that an object struck it.

As noted, McKay stopped defendant because of the cracked windshield. During the course of that stop, McKay learned that defendant's license had been suspended. McKay accordingly issued defendant a citation for a violation of ORS 811.182—driving while suspended—and ORS 815.220—obstruction of vehicle windows.

Defendant filed a motion to suppress all evidence obtained as a result of the traffic stop, contending that McKay lacked probable cause to believe that he had committed a traffic violation and that suppression was therefore required under Article I, section 9, of the Oregon Constitution.[1]

"In order to stop and detain a person for a traffic violation, an officer must have probable cause to believe that the person has committed a violation. Probable cause has two components. First, at the time of the stop, the officer must subjectively believe that a violation has occurred, and second, that belief must be objectively reasonable under the circumstances. For an officer's belief to be objectively reasonable, the facts, *as the officer perceives them*, must actually constitute a violation. Thus, an officer's belief may be objectively reasonable even if the officer is mistaken as to the facts."

*State v. Stookey*, 255 Or App 489, 491, 297 P3d 548 (2013) (citations omitted) (emphasis in original).

At the hearing on defendant's motion to suppress, McKay stated that, although he had cited defendant for driving with an obstructed window under ORS 815.220, he had listed the wrong statute in the citation. Thus, the state made no argument that it was objectively reasonable for McKay to think that defendant's windshield placed him in violation of ORS 815.220. Instead, the state argued—as it does in this appeal—that the facts that McKay perceived constituted a violation of both ORS 815.020—operation of an unsafe vehicle—and ORS 815.270—operation of a vehicle that is loaded or equipped to obstruct the driver. *See State v. Boatright*, 222 Or App 406, 410, 193 P3d 78, *rev den*, 345 Or 503 (2008) (stating that "probable cause may be based on a mistake as to *which* law the defendant violated" and that "in order to satisfy the objective component, the facts that the officer perceives to exist must establish the elements of *an* offense, even if not the offense that the officer believed the defendant committed" (emphasis in original)).

---

[1] Defendant also contended that the stop was unlawful under the Fourth Amendment to the United States Constitution. In this appeal, defendant cites only Article I, section 9, of the Oregon Constitution as a basis for reversing the trial court. We therefore confine our opinion to questions of Oregon law.

The trial court denied the motion to suppress. It concluded that the stop was supported by probable cause because the facts that McKay perceived about the windshield made it objectively reasonable for him to conclude that the condition of defendant's windshield placed him in violation of ORS 815.020. Defendant subsequently pleaded no contest to the charge of driving while suspended pursuant to a plea agreement that preserved, in writing, his right to appeal the denial of his motion to suppress. This timely appeal followed.

On appeal, defendant contends that McKay lacked an objectively reasonable basis for stopping him because the facts, as McKay perceived them, did not constitute a violation of either ORS 815.020 or ORS 815.270. Before turning to the merits of the parties' arguments under those two statutes, we first address the state's contention that defendant failed to adequately present the trial court with the statutory interpretation argument under ORS 815.020 that he now advances and that it is, consequently, unpreserved for purposes of this appeal.

The Supreme Court has summarized the policies underlying the preservation requirement as follows:

"Preservation gives a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal. Preservation also ensures fairness to an opposing party, by permitting the opposing party to respond to a contention and by otherwise not taking the opposing party by surprise. Finally, preservation fosters full development of the record, which aids the trial court in making a decision and the appellate court in reviewing it. Our jurisprudence, thus, has embraced the preservation requirement, not to promote form over substance but to promote an efficient administration of justice and the saving of judicial time.

"Preservation rules are pragmatic as well as prudential. What is required of a party to adequately present a contention to the trial court can vary depending on the nature of the claim or argument; the touchstone in that regard, ultimately, is procedural fairness to the parties and to the trial court."

*Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008) (internal quotation marks, citations, and brackets omitted). Thus, to preserve an argument for appeal, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately * * *." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000).

The record reveals that defendant adequately preserved his argument under ORS 815.020. The trial court clearly understood that the state was relying on that statute as support for its argument that there was probable cause for the stop; the court explicitly asked defense counsel why the statute did not apply to support probable cause. Defense counsel responded that ORS 815.020 did not apply because the windshield crack was insufficient to render the vehicle unsafe under the statute. That is, at its core, the same issue that defendant raises in this appeal. *See State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988) (noting the distinction "between raising an *issue* at trial, identifying a *source* for a claimed position, and making a particular *argument*" and that "[t]he first ordinarily is essential, the second less so, the third least" (emphasis in original)). Although defendant's arguments concerning a proper interpretation of ORS 815.020 are undoubtedly more fully articulated in this appeal than they were before the trial court, the policies underlying the preservation requirement were served in this case.

We therefore turn to the merits of the parties' arguments; in addressing those arguments, we are mindful that it is the state's burden to establish the lawfulness of a warrantless traffic stop. *E.g., State v. Ordner*, 252 Or App 444, 447, 287 P3d 1256 (2012), *rev den*, 353 Or 280 (2013).

The unsafe vehicle statute, ORS 815.020, provides, in pertinent part:

"(1)   A person commits the offense of operation of an unsafe vehicle if the person does any of the following:

"(a)   Drives or moves on any highway any vehicle which is in such unsafe condition as to endanger any person.

"(b) Owns a vehicle and causes or knowingly permits the vehicle to be driven or moved on any highway when the vehicle is in such unsafe condition as to endanger any person."

We recently addressed the proper application of ORS 815.020 in *Stookey*, 255 Or App 489, a case with facts similar to those presented here. There, the defendant was stopped for driving a vehicle with a single horizontal crack in its windshield. The trooper who made the stop asserted that the crack was at the defendant's eyesight level and that he believed that the crack could be distracting and dangerous. *Id.* at 492. The state argued that the trooper had objective probable cause to believe that the crack established a violation of ORS 815.020 for two reasons. First, the state contended that the crack was "in such unsafe condition as to endanger any person" because the crack would have interfered with the defendant's line of sight. The defendant responded that the statute requires not just that the windshield crack pose some heightened risk of harm, but that it create a "probable" risk of harm. We agreed with the defendant, stating:

"It is not enough that defendant's cracked windshield caused some minimally higher risk of harm by creating the possibility of interference with defendant's vision and, thus, negligibly increasing the risk of a collision. Rather, the interference had to be such that it exposed someone to a danger of *probable* harm or loss. On the record before us, we cannot say that the trooper could have objectively believed that the single crack would expose defendant or another person to a danger of *probable* harm or loss by interfering with defendant's vision."

*Id.* at 499 (emphasis in original). Second, the state argued that it would be objectively reasonable for the trooper to believe that the defendant was committing a traffic violation because the crack compromised the physical integrity of the windshield, such that it was more likely to shatter in the event of a hail storm or other similar circumstance. *Id.* at 499-500. We rejected that argument for the same reason that we did the first:

"For purposes of that theory, the only relevant fact from the trooper's testimony is that he saw a single crack. The

trooper did not testify that he saw a 'spiderweb' of cracks, or that the single crack was unusually deep. It would not be objectively reasonable to believe that, due to a single crack, a windshield was in such a dangerous condition that it was *probable* that it would inflict harm or loss upon a person, especially given that, at least as the state and trial court theorized, the risk from the windshield had to be triggered by an event such as a hail storm, flying rock, or collision."

*Id.* at 500 (emphasis in original).

As noted, defendant contends that there is insufficient evidence from which to conclude that the state of his windshield, as perceived by McKay, posed a probable risk of harm or loss. The state attempts to distinguish *Stookey* from the present case by pointing out that McKay not only observed a "large" crack, but that he also saw "some spiderwebbing" in the crack "off to the right of the driver." The state also emphasizes McKay's testimony that the spiderwebbing was positioned so that it was "[going to] be in the way of [defendant's] vision" if defendant was looking to the right.

The difficulty for the state's position is that there is insufficient evidence about the nature of the crack to conclude that McKay's observations made it objectively reasonable to believe that the windshield created the *probable* risk of harm or loss necessary to establish a violation of ORS 815.020. "[W]hether a windshield crack poses a danger depends on the characteristics of the crack." *Stookey*, 255 Or App at 499. The only information adduced about the crack at the motion to suppress hearing that distinguished this crack from the one in *Stookey* was that there was "some spiderwebbing" of the crack. The only indication about the spiderwebbing's location was the minimally informative statement that it was on the passenger's side "off to the right of the driver" such that it would "be in the way of [defendant's] vision" if defendant was looking to the right, and even that statement was made only in the context of explaining McKay's belief that the crack would be distracting. There was no evidence whatsoever about the size or extent of the spiderwebbing or about its effect on the opacity of the windshield. Although there may well be instances where a windshield crack interferes with a driver's vision to the point where driving the

vehicle creates a *probable* risk of harm or loss, the state has not carried its burden to establish that it was objectively reasonable for McKay to conclude that such was the case here.[2] Accordingly, the trial court erred in denying defendant's motion to suppress on the ground that there was probable cause at the time of the stop for McKay to conclude that defendant had violated ORS 815.020.

As it did before the trial court, the state urges, as an alternative ground upon which to affirm the trial court's denial of the motion to suppress, that McKay had an objectively reasonable belief that the condition of defendant's windshield established a violation of ORS 815.270(1)(b). ORS 815.270 provides, in pertinent part:

"(1) A person commits the offense of operating a vehicle that is loaded or equipped to obstruct the driver if the person is operating a vehicle that is loaded or equipped or where baggage or an encumbrance does any of the following:

"(a) Substantially obstructs the driver's views to the rear, through one or more mirrors and otherwise.

"(b) Obstructs the driver's view to the front or sides.

"(c) Interferes with control of the driving mechanism.

"(d) Prevents the free, unhampered operation of the vehicle by the driver."

The state argues that the facts that McKay perceived about the windshield crack established a violation of that statute, either because the windshield crack was an "encumbrance" or because the windshield crack rendered defendant's vehicle "equipped" to obstruct the driver's view. Defendant responds that the statute is violated only when an extrinsic object is placed on or within a vehicle and that intrinsic conditions of the car do not violate the statute.

No prior case has analyzed whether a windshield crack may suffice to establish a violation of ORS 815.270. We

---

[2] We reach a similar conclusion with respect to McKay's additional stated concern that the windshield would more easily shatter in the event that an object struck it. As was the case in *Stookey*, the record is insufficient to conclude that the windshield's integrity gave rise to a probable risk of harm or loss under ORS 815.020, especially given that the hypothesized danger, an object shattering the windshield on impact, was a contingent possibility.

therefore discern the legislative intent behind the statute by applying the statutory interpretation analysis of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). We do so by examining the text of the statute in context and any relevant legislative history. *Gaines*, 346 Or at 171-72.

Because the legislature has not provided a definition of "encumbrance," we look to the dictionary to assist us in determining the term's ordinary meaning. The relevant definition of encumbrance provides, "**2 :** something that encumbers **:** a burden that impedes action or renders it difficult **:** IMPEDIMENT * * *." *Webster's Third New Int'l Dictionary* 747 (unabridged ed 2002). Although it is conceivable that—under that definition alone—a windshield crack may be an impediment that "obstructs the driver's view," our task is not finished, for "we do not simply consult dictionaries and interpret words in a vacuum." *State v. Cloutier*, 351 Or 68, 96, 261 P3d 1234 (2011). Accordingly, we look to the context in which the word "encumbrance" appears. *Id.* "As a part of context, [a] court considers, among other things, other provisions of the same statute, or other related statutes, *prior versions of the statute*, and this court's decisions interpreting the statute." *Jones v. General Motors Corp.*, 325 Or 404, 411, 939 P2d 608 (1997) (emphasis added). The current version of ORS 815.270 was enacted as part of a sweeping 1983 overhaul of Oregon's motor vehicle laws. Or Laws 1983, ch 338. The legislature explained that the overhaul was not designed to effect substantive changes to the code:

> "It is not the purpose or intent of the Oregon Legislative Assembly to change the law by enacting the revision of the Oregon Vehicle Code contained in chapter 338, Oregon Laws 1983. The intent of the assembly is to make the law relating to vehicles easier to use, amend, and understand by simplifying the language, establishing a single set of definitions for the code, eliminating confusing references, eliminating verbiage, eliminating some confusing use of terminology and standardizing the presentation of prohibitions and penalties, all in accordance with existing interpretation and use of the vehicle code, and rearranging existing concepts under the vehicle code in a more logical fashion."

Or Laws 1983, ch 338, § 3. We thus look to the prior version of ORS 815.270 for indications of the legislature's intended definition of "encumbrance."

The prior version of the unsafe-load statute[3] did not provide for a violation when an encumbrance obstructed the driver's view, but rather only when an encumbrance interfered with control of the vehicle. That version read, in pertinent part:

"(1)   A driver shall not operate a vehicle:

"(a)   Which is loaded or equipped so as to substantially obstruct the driver's views to the rear, through one or more mirrors and otherwise, or to obstruct the driver's view to the front or sides or to interfere with control or with the driving mechanism; or

"(b)   When a person is in the driver's lap or in the driver's embrace, or where baggage or an encumbrance prevents the free unhampered operation of the vehicle by the driver."

*Former* ORS 487.625 (1981), *repealed by* Or Laws 1983, ch 338, § 978.[4] What sort of encumbrance did the legislature contemplate as sufficient to prevent the "free unhampered operation of the vehicle"? The answer is suggested by the other types of items that were identified as sufficient to do so, *viz.*, a person in the driver's lap or embrace, or baggage. Those items suggest that only an object that was extrinsic to the motor vehicle was sufficient to establish a violation of *former* ORS 487.625(1)(b). Although the statute may now be violated by an encumbrance that obstructs the driver's view, nothing in ORS 815.270 suggests that the legislature intended the term "encumbrance" to mean something other than an item that is extrinsic to the vehicle. We thus conclude that an encumbrance, for purposes of ORS 815.270, is an item that is extrinsic to the vehicle.

---

[3] In interpreting a statute, we draw no conclusions from the title of the offense described. *See* Or Laws 1983, ch 338, § 2 ("The names given offenses in the vehicle code do not establish or limit the elements of the offense described but are merely for the convenience of the readers [of the code] * * *."). Additionally, the boldface title of the section does not inform our understanding of the legislature's intent. *See* ORS 174.540; *Church v. Grant County*, 187 Or App 518, 526 n 4, 69 P3d 759 (2003) ("In the context of statutory construction, a statute's caption is of no legal significance.").

[4] No prior appellate decision addressed *former* ORS 487.625.

It remains to determine whether a vehicle with a cracked windshield is, or may be, "equipped" so as to obstruct the driver. ORS 815.270(1)(b). The relevant definition of "equipped" states: "To provide with what is necessary, useful, or appropriate: as **a** (1) **:** to supply with material resources (as implements or facilities) **:** to fit out * * * **b :** to make ready or competent for service or action or against a need * * *." *Webster's* at 768. Although that definition of "equipped" suggests that affixed vehicle parts or components may violate the statute, we do not perceive, in the legislature's use of that word in context, the intent to broadly depart from the other ways in which the statute may be violated. The term "baggage" plainly implies items that are extrinsic to the vehicle. The relevant definition of "load" provides: "**1 a :** to put a load in or on (a means of conveyance)." *Webster's* at 1325. Thus, the statute is violated by certain loads or baggage or encumbrances, *i.e., extrinsic objects*; it would be incongruous if the legislature intended to establish a violation for an *intrinsic condition* of the vehicle, such as a cracked windshield, in the same section.[5] Our conclusion on that point is reinforced by the fact that a violation of ORS 815.270 is a Class C traffic infraction, whereas a violation of the obstructed window statute is a Class D infraction. As we pointed out in *Stookey*, the legislature

> "apparently considered the harm posed by a driver's decreased ability to see the road through the windshield, and it classified a condition—an obstructed window—posing that type of harm as a Class D violation. Thus, it would be incongruous for a similar condition—a cracked windshield—posing a similar type of harm to constitute a [different class of] violation."

*Stookey*, 255 Or App at 498. The legislature also apparently considered the harm posed by baggage or loads that obstruct

---

[5] On that point, we are also convinced by the fact that the motor vehicle code contains extensive, specific, and detailed provisions that create violations for certain intrinsic vehicle components. *See* ORS 815.140 - 815.175 (tire requirements); ORS 815.180 - 815.190 (mudguard and fender requirements); ORS 815.195 - 815.205 (emission standards); ORS 815.210 - 815.222 (windows); ORS 815.225 - 815.230 (horns); ORS 815.235 - 815.237 (mirrors); ORS 815.245 (ground clearance requirement); ORS 815.250 (exhaust system); ORS 815.255 (speedometer). If the legislature intended for certain intrinsic vehicle conditions to constitute a traffic violation, one would naturally expect the legislature to articulate those conditions in the appropriate place in the statutory scheme rather than a section that addresses unsafe loads and baggage.

a driver's view and chose to classify that harm as a Class C violation. Read as a whole and in context, ORS 815.270 does not demonstrate the legislative intent that an intrinsic condition of a vehicle could violate that statute.

The only prior appellate opinion that has addressed ORS 815.270 is consistent with that understanding. In *State v. Zigler*, 100 Or App 700, 788 P2d 484 (1990), the police received a tip that a man was loading a drug lab into a car. An officer responded and observed the defendant driving the car; the officer stated that "the trunk was open, obscuring the vision of the driver" and that there were items "piled up in the back seat." *Id.* at 702 (internal quotation marks omitted; brackets omitted). We concluded that the officer had probable cause to stop the defendant when he observed a traffic offense, and we cited—without further explanation— ORS 815.270 as the offense committed. The state argues that *Zigler* supports its position that the unsafe-load statute can be violated by a motor vehicle's intrinsic condition—*viz.*, the open trunk. An examination of the defendant's brief in that case reveals, however, that the officer who conducted the traffic stop perceived that the trunk lid was propped open by items that the defendant had loaded into the trunk.[6] Additionally, the officer who stopped the defendant stated that he could see, from his position behind the defendant's car, several items, such as "papers," sticking up over the trunk lid in the back seat, a fact that we noted in the opinion. *Id.* at 702. In other words, extrinsic items were obstructing the defendant's vision over the trunk lid, which was itself apparently open because of a load in the trunk of the car. *Zigler* thus does not stand for the proposition that an intrinsic characteristic of the vehicle may violate ORS 815.270. Given the foregoing, we conclude that McKay lacked objective probable cause to believe that the condition of defendant's windshield established a violation of ORS 815.270.

Having concluded that the stop of defendant was unsupported by probable cause, we turn to whether suppression

---

[6] According to the defendant's opening brief, one officer testified that the trunk lid was "resting on some material in the back." Another testified that the trunk was six to eight inches ajar and was tied shut with some type of rope or wire. A civilian witness stated that she could see a bicycle sticking out of the trunk.

of the evidence obtained from the stop is required. Evidence that is the product of an unlawful stop is properly suppressed only if the defendant establishes a "minimal factual nexus—that is, at minimum, the existence of a 'but for' relationship—between the evidence sought to be suppressed and prior unlawful police conduct \* \* \*." *State v. Hall*, 339 Or 7, 25, 115 P3d 908 (2005). If the defendant establishes that there is a minimal factual nexus, the burden shifts to the state to show that "the evidence did not derive from the preceding illegality." *Id.*

The state argues that there is no minimal factual nexus because the state already knew the status of defendant's license—by virtue of its license database—before the traffic stop. That argument is foreclosed for the reasons explained in *Stookey*, 255 Or App at 495 n 4 (citing *State v. Backstrand*, 231 Or App 621, 629, 220 P3d 748 (2009), *rev allowed*, 350 Or 130 (2011)). The state does not argue that the evidence did not derive from the preceding illegality.

Reversed and remanded.