Argued and submitted May 19, affirmed August 19, 2015

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

ESMIRNA EDITH RABANALES-RAMOS,
*Defendant-Respondent.*

Washington County Circuit Court
C132295CR; A156353

359 P3d 250

Peenesh H. Shah, Assistant Attorney General, argued the cause for appellant. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Rond Chananudech, Deputy Public Defender, argued the cause for respondent. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Sercombe, Presiding Judge, and Tookey, Judge, and Edmonds, Senior Judge.

TOOKEY, J.

**TOOKEY, J.**

An Oregon State Police trooper stopped defendant for driving while using a mobile communication device, a violation of ORS 811.507. During the traffic stop, the trooper developed probable cause to arrest defendant for the crime of driving under the influence of intoxicants, and defendant was later charged with felony driving under the influence of intoxicants, ORS 813.011. Before trial, defendant moved to suppress the evidence obtained during the stop, arguing that the trooper did not have probable cause to initiate the traffic stop. The trial court granted defendant's motion, and the state now appeals. We conclude that the trooper's belief that defendant had "use[d]" a cell phone while driving, in violation of ORS 811.507, was not objectively reasonable under the circumstances. Accordingly, we affirm.

This case centers on the correct interpretation of ORS 811.507.[1] That statute provides, in part:

"(1)   As used in this section:

"(a)   'Hands-free accessory' means an attachment or built-in feature for or an addition to a mobile communication device, whether or not permanently installed in a motor vehicle, that when used allows a person to maintain both hands on the steering wheel.

"(b)   *'Mobile communication device' means a text messaging device or a wireless, two-way communication device designed to receive and transmit voice or text communication.*

"(2)   *A person commits the offense of operating a motor vehicle while using a mobile communication device if the person, while operating a motor vehicle on a highway, uses a mobile communication device.*

"(3)   This section does not apply to a person who activates or deactivates a mobile communication device or a function of the device or who uses the device for voice communication if the person:

---

[1] ORS 811.507 was amended in 2013, with an effective date of January 1, 2014. Or Laws 2013, ch 757, §§ 1, 3. Those amendments do not affect our analysis of this case.

"(a)   Is summoning medical or other emergency help if no other person in the vehicle is capable of summoning help;

"(b)   Is using a mobile communication device for the purpose of farming or agricultural operations;

"(c)   Is operating an ambulance or emergency vehicle;

"(d)   Is 18 years of age or older and is using a hands-free accessory;

"(e)   Is operating a motor vehicle while providing public safety services or emergency services;

"(f)   Is operating a motor vehicle while acting in the scope of the person's employment as a public safety officer, as defined in ORS 348.270;

"(g)   Is operating a tow vehicle or roadside assistance vehicle while acting in the scope of the person's employment;

"(h)   Holds a valid amateur radio operator license issued or any other license issued by the Federal Communications Commission and is operating an amateur radio;

"(i)   Is operating a two-way radio device that transmits radio communication transmitted by a station operating on an authorized frequency within the citizens' or family radio service bands in accordance with rules of the Federal Communications Commission;

"(j)   Is operating a vehicle owned or contracted by a utility for the purpose of installing, repairing, maintaining, operating or upgrading utility service, including but not limited to natural gas, electricity, water or telecommunications, while acting in the scope of the person's employment; or

"(k)   Is using a function of the mobile communication device that allows for only one-way voice communication while the person is:

"(A)   Operating a motor vehicle in the scope of the person's employment;

"(B)   Providing transit services; or

"(C)   Participating in public safety or emergency service activities.

"(4)   The offense described in this section, operating a motor vehicle while using a mobile communication device, is a Class C traffic violation."

(Emphases added.)

Except as noted below, the relevant facts are undisputed. Defendant was driving a vehicle in the right lane of a public highway at approximately 2:00 a.m. when an Oregon State Police trooper, who was driving in the left lane, pulled up alongside her in his patrol vehicle. As the trooper drove alongside defendant, he observed "light coming up to [defendant's] face" that he believed was coming "from a device that was in her hand that she was looking down at." The trooper slowed down and let defendant pass him, and then he moved into the right lane behind her. The light from the device remained on for approximately 10 seconds.[2] The trooper did not see defendant put the device up to her ear, move her lips as if she were talking, or push any buttons.

Believing that defendant had "use[d] a mobile communication device" in violation of ORS 811.507, the trooper initiated a traffic stop. During the course of the traffic stop, the trooper smelled an odor of alcohol coming from inside the vehicle, and he noticed that defendant's speech was slightly slurred and that she had bloodshot, glassy, and watery eyes, droopy eyelids, and a "lethargic" look on her face. The trooper administered field sobriety tests and subsequently arrested defendant for driving under the influence of intoxicants.

Before trial, defendant filed a motion to suppress the evidence obtained during the traffic stop, on the ground that the trooper did not have probable cause to stop defendant for using a mobile communication device while driving in violation of ORS 811.507. Specifically, defendant argued that, because the trooper did not have probable cause to believe that the device in defendant's hand was a "mobile communication device"—and not, for example, a GPS mapping device or music-playing device—the evidence obtained

_____

[2] On appeal, the state contends that the trooper observed defendant looking down at the lit screen "for a period of approximately ten seconds." We understand from the trooper's testimony that he observed that the screen was lit for 10 seconds, but the trooper did not testify that defendant actually looked down at the lit screen for the entire 10-second period of time.

during the stop should be suppressed under both Article I, section 9, of the Oregon Constitution, and the Fourth Amendment to the United States Constitution.[3] Further, defendant argued that, even assuming that the trooper had probable cause to believe that the device in defendant's hand was a mobile communication device, "simply looking at a [cell phone], without more," does not constitute "use" for purposes of ORS 811.507(2). Thus, defendant argued, because the trooper only saw defendant looking down at what he believed was a cell phone, and not holding it up to her ear, moving her lips as if she were talking, or pushing any buttons, he did not have probable cause to believe that defendant had "use[d]" a mobile communication device, as prohibited by ORS 811.507.

In response, the state argued that the trooper had probable cause to believe that the device in defendant's hand was a cell phone, based on "the prevalence of cell phones in [the trooper's] observations as a police officer," which, according to the state, was "consistent with common sense and experience." The state also argued that the trooper had probable cause to believe that defendant "use[d]" the cell phone, because ORS 811.507 not only prohibits the use of such a device for communication purposes while driving, it prohibits "any use" of such a device, subject only to the limited exceptions set forth in ORS 811.507(3).

The trial court granted defendant's motion to suppress, concluding, without further explanation, that "at most the police officer had a reasonable suspicion to believe that [defendant] was violating the statute, and not probable cause[;] it didn't reach that level."

The state now appeals, arguing that the trooper observed facts that, "when combined with his training and experience, objectively established that" (1) "the device at

---

[3] Article I, section 9, of the Oregon Constitution provides, in part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

Because we consider questions of state law first, and because our resolution of this case under Article I, section 9, is dispositive, we do not consider defendant's arguments under the Fourth Amendment to the United States Constitution. *See* *State v. Kennedy*, 295 Or 260, 262-63, 666 P2d 1316 (1983) (court considers and disposes of questions of state law before reaching federal law claims).

issue was more likely than not a [cell phone], which is a 'mobile communication device' under ORS 811.507(2)"; and (2) "defendant was more likely than not employing her [cell phone] for a purpose prohibited by ORS 811.507(2)." According to the state, ORS 811.507(2) prohibits *any* use of a mobile communication device, "with limited exception only for adjusting settings such as volume or power." The state argues that the trooper, based on his observation of defendant looking down at a lit screen over a period of 10 seconds, had a "substantial objective basis for believing" that the device in defendant's hand was a cell phone, and that, after observing defendant "looking at and operating" the cell phone over the course of approximately 10 seconds, the trooper reasonably believed that defendant was "us[ing]" the cell phone in violation of ORS 811.507(2).

Defendant responds that the trooper's belief that defendant had violated ORS 811.507 was not objectively reasonable under the circumstances. First, defendant contends that the trooper's "belief that defendant had a [cell phone]—as opposed to an iPod, a Kindle Fire, or a small tablet—required a stacking of inferences." Second, defendant contends that, even assuming that the trooper reasonably believed that defendant had a cell phone, his belief that defendant had "use[d]" the cell phone in violation of ORS 811.507 was not objectively reasonable. In defendant's view, a person violates ORS 811.507 only when that person uses a mobile communication device for communication purposes— *i.e.*, for voice communication or text messaging. Further, defendant argues, the exception for activating or deactivating the device or a function of the device, as set forth in ORS 811.507(3), can include turning a cell phone on or off, or opening an application on a smartphone.[4] In other words, according to defendant, the trooper's observation that defendant had looked down at a lit screen at least twice within 10 seconds was not sufficient to create an objectively reasonable belief that she had violated ORS 811.507.

---

[4] A "smartphone" is "a cell phone that includes additional software functions (such as e-mail or an Internet browser)." http://unabridged.merriam-webster.com/unabridged/smartphone (last accessed August 10, 2015). As defendant describes, examples of software commonly available on smartphones include GPS mapping applications, weather applications, and music players.

We review a trial court's grant of a motion to suppress evidence for legal error. *State v. Vasquez-Villagomez*, 346 Or 12, 23, 203 P3d 193 (2009). An officer who stops and detains a person for a traffic violation must have probable cause to believe that the person has committed a violation. *State v. Stookey*, 255 Or App 489, 491, 297 P3d 548 (2013) (citing ORS 810.410(2) and (3); *State v. Matthews*, 320 Or 398, 402, 884 P2d 1224 (1994)). As we explained in *Stookey*, 255 Or App at 491, "[p]robable cause has two components. First, at the time of the stop, the officer must subjectively believe that a violation has occurred, and second, that belief must be objectively reasonable under the circumstances." *See also State v. Anderson*, 259 Or App 448, 451, 314 P3d 335 (2013) (stating same). For an officer's belief to be objectively reasonable, "the facts, as the officer perceives them, must actually constitute a violation." *Stookey*, 255 Or App at 491 (emphasis omitted). In other words, "[t]he objective component of the probable-cause inquiry asks whether the facts, as perceived by the officer, constitute a violation of a statute." *Id.* at 496.

In this case, the parties appear to agree that the trooper subjectively believed that defendant had committed a violation; thus, the issue on appeal is whether the trooper's belief was objectively reasonable. To determine whether the facts, as perceived by the trooper, constituted a violation of ORS 811.507, we must interpret the phrase "uses a mobile communication device," as set forth in ORS 811.507(2).

When construing a statute, our goal is to discern the legislature's intent by examining the text and context of the statute, and the legislative history, if useful. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). We begin with the text and context of ORS 811.507(2). As noted above, ORS 811.507(2) provides, "A person commits the offense of operating a motor vehicle while using a mobile communication device if the person, while operating a motor vehicle on a highway, uses a mobile communication device." The statute does not provide a definition of "uses"; we therefore look to the plain meaning of that term. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) ("[W]ords of common usage typically should be given their plain, natural, and ordinary meaning."). As relevant to this

case, the plain meaning of the term "use" can include "to put into action or service : have recourse to or enjoyment of : EMPLOY"; or "to carry out a purpose or action by means of : make instrumental to an end or process : apply to advantage : turn to account : UTILIZE[.]" *Webster's Third New Int'l Dictionary* 2523-24 (unabridged ed 2002). Those dictionary definitions suggest that the plain meaning of the term "uses" can apply broadly to several activities. A person can "put [a mobile communication device] into action or service," enjoy, employ, or utilize a mobile communication device for many purposes, especially considering current smartphone technology—for example, to speak with others and send various types of text messages, as well as to access the Internet, check e-mail, or get directions.

However, the context of ORS 811.507(2), including the other provisions of ORS 811.507, suggests that the meaning of the term "uses" in ORS 811.507(2) is limited to use of a mobile communication device for the purpose of voice or text communication. *See PGE*, 317 Or at 611 (context of a statutory provision includes other provisions of the same statute). First, we note that the definition of "mobile communication device" set forth in ORS 811.507(1) is "a *text messaging device* or a wireless, two-way *communication device* designed to receive and transmit *voice or text communication*." (Emphases added.) That definition suggests that the activity that the legislature intended to address was using a mobile communication device for voice or text communication. The legislature did not include in its definition of "mobile communication device" a device incapable of receiving and transmitting voice or text communication, such as a hand-held GPS mapping device or music-playing device, which suggests that the legislature did not intend to broadly prohibit the use of *any* mobile device for *any* purpose; rather, the legislature intended to address the specific act of communicating, by voice or text, using a mobile communication device. Furthermore, the lack of any reference in the statute to possible functions of a mobile communication device apart from receiving and transmitting voice or text communication, such as playing music or getting directions, suggests that the legislature did not contemplate the application of ORS 811.507 to such functions.

The relevant legislative history of ORS 811.507 supports our interpretation. ORS 811.507 was first enacted in 2007, and, in its original form, applied only to drivers under 18 years of age:

"(1)  A person under 18 years of age commits the offense of operating a motor vehicle while using a mobile communication device if the person, while operating a motor vehicle on a highway, uses a mobile communication device and the person holds [a provisional driver license, special student driver permit, or instruction driver permit].

"(2)  For purposes of this section, 'mobile communication device' means a text messaging device or a wireless, two-way communication device designed to receive and transmit voice or text communication.

"(3)  This section does not apply:

"(a)  To a person who is summoning medical or other emergency help if no other person in the vehicle is capable of summoning help; or

"(b)  To a person using a mobile communication device for the purpose of farming or agricultural operations."

Or Laws 2007, ch 870, § 2.

In 2009, the legislature passed House Bill 2377 (HB 2377), which included amendments to ORS 811.507. The statute was amended to apply to all drivers, regardless of age, with several enumerated exceptions. Or Laws 2009, ch 834, § 1. As relevant to this case, the legislature maintained the same prohibition on driving while "us[ing]" a mobile communication device and the same definition of "mobile communication device." The 2009 version of the statute provided, in part:

"(1)  As used in this section:

"(a)  'Hands-free accessory' means an attachment or built-in feature for or an addition to a mobile communication device, whether or not permanently installed in a motor vehicle, that when used allows a person to maintain both hands on the steering wheel.

"(b) 'Mobile communication device' means a text messaging device or a wireless, two-way communication device designed to receive and transmit voice or text communication.

"(2)   A person commits the offense of operating a motor vehicle while using a mobile communication device if the person, while operating a motor vehicle on a highway, uses a mobile communication device.

ORS 811.507 (2009).[5]

Discussion in the House Transportation Committee and Senate Consumer Protection and Public Affairs Committee regarding HB 2377 suggests that the activities that the legislature intended to address were talking and texting on mobile communication devices while driving. When Representative Carolyn Tomei, a sponsor of HB 2377, testified before the House Transportation Committee, she stated that the bill "prohibits motorists from using a hand-held mobile communication device while driving. This includes both talking on the phone and text messaging, which is becoming more and more of a problem. Hands-free devices would be permitted." Audio Recording, House Committee on Transportation, HB 2377, Feb 20, 2009, at 4:27 (testimony of Rep Carolyn Tomei), https://olis.leg.state.or.us (accessed August 10, 2015). Representative Tomei explained that

"80% of the 270 million cell phone users in the United States talk while driving. 19% of the motorists text message while driving. A 2005 study found that drivers talking on cell phones were four times more likely to get in a crash with serious injuries. The national safety council says there is no dispute that driving while talking on your cell phone or texting while driving is dangerous. The time has come for Oregon to outlaw this dangerous practice."

*Id.* at 6:10.

---

[5] ORS 811.507(3) (2009) listed a number of exceptions to the prohibition set forth in subsection (2) that are not relevant to our analysis.

ORS 811.507 was amended two more times, in 2011 and 2013, but those amendments did not affect the "uses" language in subsection (2) of the statute.

Although the legislative history above indicates that the purpose of prohibiting talking and texting while driving was to decrease distractions while driving, it does not indicate that the legislature intended ORS 811.507 to prohibit *all* distractions. During the public hearing on HB 2377 mentioned above, members of the House Committee on Transportation raised the issue of whether allowing a hands-free device would effectively reduce the distraction caused by talking on a mobile communication device, and they discussed whether the law should also prohibit other types of distractions. In addition, Brian DeLashmutt, a lobbyist for the Oregon State Police Officers Association, mentioned that there was previously an "encumbered driver" statute that "covered" all distractions, and that law enforcement officers had previously stated that it "worked pretty well." *Id.* at 1:10:25 (testimony of Brian DeLashmutt). After further discussion by members of the House Committee on Transportation and witnesses who testified before the committee about other types of distractions—for example, eating, driving with a dog in one's lap, and talking or sitting too close to passengers—Representative Jim Weidner stated, "It sounds like we should be looking at the [encumbered driver law] and reworking that, because there are tons of situations that we face in the car. * * * I think we need to broaden this up." *Id.* at 1:17:03 (testimony of Rep Weidner). However, Representative Cliff Bentz disagreed, stating that "it doesn't seem like we should be talking about the encumbered [driver law], because I think that applies to a less frequent occurrence of things, and the cell phone is all the time, and thus, it needs its own response[.]" *Id.* at 1:20:26 (testimony of Rep Bentz). Representative Tomei then agreed with Representative Bentz, stating,

> "This is a very simple bill. * * * The perfect is the enemy of the good. This covers one issue. It does not cover dogs in the car. It does not cover hamburgers in your lap. It does not cover your arm around your girlfriend. It covers one issue which we know is a growing problem."

*Id.* at 1:20:46 (testimony of Rep Tomei). Thus, the legislative history suggests that, although the legislature was aware of various distractions that could lead to dangerous driving, ORS 811.507 was intended to prohibit a specific type of

distraction while driving—talking and texting on a mobile communication device.[6]

Having determined that ORS 811.507 prohibits talking and texting on a mobile communication device, but not *all* activities that can be performed using such a device, we now consider whether, in this case, the trooper's belief that defendant "use[d]" a mobile communication device was objectively reasonable under the circumstances.

As noted above, the trooper observed that defendant held a device that emitted a light for approximately 10 seconds, and that defendant looked down at the device at least twice within that time period. The trooper testified that he did not see defendant push any buttons or hold the device up to her ear. Based on those observations, and even assuming, without deciding, that the trooper reasonably believed that the device defendant held was a "mobile communication device," we conclude that his belief that defendant had "use[d]" that device was not objectively reasonable under

---

[6] The state argues that interpreting the term "uses" in ORS 811.507(2) as meaning only talking or texting does not make sense in light of ORS 811.507(3), which provides an exception for a person who "activates or deactivates a mobile communication device or a function of the device." Specifically, the state contends that if the term "uses" is interpreted as prohibiting voice or text communication only, then "the conduct excused in ORS 811.507(3)'s activate-or-deactivate phrase would not fall within the narrow ambit of ORS 811.507(2)'s prohibition in the first place," because "ORS 811.507(2) would not, by its own terms, prohibit activating and deactivating functions on a device." Thus, according to the state, if we interpret the term "uses" as meaning only talking or texting, then "the activate-or-deactivate exception to liability would be meaningless surplusage."

We believe that the provision in ORS 811.507(3) providing that the section "does not apply to a person who activates or deactivates a mobile communication device or a function of the device" is meant to specifically clarify that a person can turn on or off a mobile communication device, or a "function" of that device, without violating the statute. Contrary to the state's contention, the legislature's inclusion of that language in subsection (3) does not necessarily signify or imply that the actions set forth in subsection (3) are encompassed within what they intended the term "uses" to mean in ORS 811.507(2); instead, the legislature was merely specifying behavior to which the prohibition against "us[ing]" a mobile communication device does not apply and clarifying the scope of that prohibition. *See* Audio Recording, House Committee on Transportation, HB 2377, Feb 20, 2009, at 21:58 (testimony of Craig Campbell), https://olis.leg.state.or.us (accessed August 10, 2015) ("In order for some hands-free devices to work, you actually have to reach out one of your hands and press a button to activate it or deactivate it, or activate the function, and what this [language relating to 'activating or deactivating the mobile communication device or a function of the device'] would allow to happen is for that brief moment that you need to activate your hands-free device you're free to do so without it falling under * * * the new law.").

the circumstances. As defendant notes, merely looking down at a mobile communication device while driving does not violate ORS 811.507. Moreover, although the trooper's observation of a light shining up from the device for approximately 10 seconds suggests that defendant might have been using the device in some way, the trooper did not testify to any further observations that would indicate that defendant was using the device in a way that violates ORS 811.507(2), that is, using it to receive and transmit voice or text communication.[7]

We conclude that the trooper did not have probable cause to stop defendant for a violation of ORS 811.507 and, therefore, the stop violated Article I, section 9, of the Oregon Constitution. Accordingly, the trial court did not err when it granted defendant's motion to suppress the evidence that resulted from that stop.

Affirmed.

---

[7] We stress that our conclusion that the trooper did not have probable cause to initiate a traffic stop is limited to the facts of this case, and we express no opinion as to what other factual circumstances might give rise to an objectively reasonable belief that a violation of ORS 811.507 has occurred.